UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ACKERMAN BROTHERS
FARFMS, LLC, *et al.*,

       *Plaintiff,*

v.

UNITED STATES DEPARTMENT
OF AGRICULTURE, *et al.*,

       *Defendants.*

                                /

Case No. 1:17-cv-11779

District Judge Thomas L. Ludington
Magistrate Judge Patricia T. Morris

## REPORT AND RECOMMENDATION REGARDING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS (ECF No. 143)

**I. RECOMMENDATION**

This matter has been referred for Report and Recommendation under Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiffs' Motion for Attorneys' Fees (ECF No. 143) be **GRANTED IN PART AND DENIED IN PART**.

**II. REPORT**

    **A. Background**

On June 5, 2017, Plaintiffs filed a class action suit in this Court under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.* on behalf of all dry bean farmers in Michigan, Minnesota, and North Dakota who purchased Dry Bean

1

Revenue Endorsement ("DBRE") crop insurance coverage for their dry bean crops in 2015 from Defendant insurance companies. (ECF No. 1). Although the insurance coverage was to protect them against a market price decline, no indemnity was paid to them because of unfavorable determination made by Defendants Risk Management Agency ("RMA") and the Federal Crop Insurance Corporation ("FCIC"). (*Id*. at PageID.2). The current action now includes only Michigan farmers.

Following extensive litigation in this Court, the Sixth Circuit held that Defendants had violated the APA. *Ackerman v. USDA*, 995 F.3d 528 (6th Cir. 2021). On remand from the Sixth Circuit, the District Court considered but rejected Plaintiffs' proposed remedy of reforming CBRE policies to require the FCIC to announce a harvest price. (ECF No. 137, PageID.18103). Instead, the Court, noting that it was "a close case," adopted Defendants' position that the case should be remanded to the administrative level for further review. (*Id*. at PageID.18104, 18111-12).

On January 26, 2022, Plaintiffs appealed the District Court's remand order to the Sixth Circuit. (ECF No. 139). On July 20, 2022, the Sixth Circuit dismissed the appeal, observing that "'an order remanding for further administrative proceedings is not a final order which is immediately appealable.'" (ECF Nos. 141, PageID.18120) (citing *Nat'l Air Traffic Controllers Ass'n v. Sec'y of Dep't of*

2

*Transp.*, 2007 WL 2141941, at *2 (6th Cir. July 26, 2007) (per curiam)). Plaintiffs filed the present motion on November 15, 2022.

### B. Applicable Law

The Equal Access to Justice Act ("EAJA") is one of some 131 fee shifting statutes enacted by Congress. *See Coulter v. State of Tennessee*, 805 F.2d 146, 148 (6thCir. 1986), *abrogated on other grounds by Ne. Ohio Coal. for the Homeless (NEOCH) v. Husted*, 831 F.3d 686 (6th Cir. 2016). Specifically, 28 U.S.C. § 2412(d)(1)(A) provides, in pertinent part:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States ... unless the court finds the position of the United States was substantially justified or that special circumstances make an award unjust.

The question of whether the position of the United States was "substantially justified" is answered with respect to not only the civil action, but to the administrative decision upon which the civil action is based:

> "(D) 'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based...."

28 U.S.C. § 2412(d)(2)(D).

3

### C. Analysis

Plaintiffs contend that they are entitled to fees and costs under the EAJA, arguing that they are the "prevailing party" within in the meaning of the EAJA. (ECF No. 143, PageID.18129). They cite the Sixth Circuit's determination in their first appeal, *Ackerman, supra,* 995 F.3d 528, which held that Defendants violated the APA and as such obtained "a 'material alternation of the legal relationship of the parties,' which was 'judicially sanctioned.'" (*Id.*) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001)), *superseded by statue on other grounds.* They argue that neither Defendants' prelitigation nor litigation position was substantially justified. (*Id.* at PageID.18132-34). Plaintiffs request a grant of $157,310.00 in fees and expenses and additional fees for time spent preparing a reply brief. (*Id.* at PageID.18138).

In turn, Defendants argue that their position was substantially justified. (ECF No. 146). They characterize Plaintiffs' Sixth Circuit success in the first appeal as "a minor piece of this case" which achieved "almost none of [their] goals" in bringing the lawsuit. (*Id.* at PageID.18291). They note that while Plaintiffs' second amended complaint seeks to (1) set a harvest price for the 2015 crop year, (2) reform Defendants' insurance policies, (3) rescind the "illusory" policies, and (4) declare that Defendants erred by approving the proposal to sell the insurance at issue, the Court granted only the last request and remanded the case to the USDA for further

4

review. (*Id*. at PageID.18292). Defendants contend that if the Court finds that their position was not substantially justified, the fee award should be reduced by striking fees "for time expended on losing issues . . . ." (*Id*. at PageID.18293).

In reply, Plaintiffs cite the Sixth Circuit's holding in their first appeal which references Defendants' "mistaken belief." (ECF No. 147, PageID.18301) (citing *Ackerman,* 995 F.3d at 529). Plaintiffs reiterate their position that no justification exists for the Defendants' prelitigation position and that they "continued to perpetuate" the mistake by advancing "a faulty premise" to the District Court which required Plaintiffs to file their first appeal. (*Id*. at PageID.18303).

### 1. Plaintiffs are Prevailing Parties

To justify an award of attorney fees, a party must be a "prevailing party." In *Hewitt v. Helms,* 482 U.S. 755, 760 (1987), the Supreme Court noted that "[r]espect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." In *Texas State Teachers Assn. v. Garland Independent School Dist.,* 489 U.S. 782, 792 (1989), the Court refined the definition of "prevailing party" as follows:

> "Thus, at a minimum, to be considered a prevailing party ... the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant."

*See also Buckhannon,* 532 U.S. at 604–605 (reiterating the "change of relationship" test).

5

Here, the Sixth Circuit reversed this Court's grant of summary judgment to the Defendant and remanded the case, finding that the Defendant had violated the Administrative Procedures Act. This clearly changed the relationship of the parties. Plaintiffs are prevailing parties.

### 2. The Government's Position was not Substantially Justified

The Sixth Circuit majority began its opinion reversing the grant of summary judgment with the observation that "[t]o recite the facts in this case is essentially to decide it." *Ackerman*, 995 F.3d at 529. In other words, it was clear that the Defendants' position at the administrative level, in this Court, and in the Sixth Circuit was not justified; rather, it was based on a critical, albeit inadvertent error that resulted in a statutory violation and an administrative decision that was arbitrary and capricious:

> As shown above, the agency violated 7 C.F.R. § 400.701 when it found that the Michigan 508(h) proposal presented only "non-significant changes" to the Minnesota one. (A September 2016 revision to § 400.701 is inapposite here.) Again the mistake was by all appearances inadvertent: the FCIC appears simply not to have realized that the endorsements in the Michigan and Minnesota 508(h) proposals included different default pricing mechanisms. That change was plainly "significant," so the agency was required to treat the Michigan submission as "a new 508(h) submission" and to "forward the complete 508(h) submission to at least five expert reviewers[.]" 7 C.F.R. §§ 400.709, 400.706. *The FCIC did neither of those things, so its approval of the Michigan submission was done "without observance of procedure required by law[.]"* 5 U.S.C. § 706(2)(D).
>
> The record likewise makes clear that, because of the same mistake, the agency did not adequately consider the impact of the default pricing

6

> mechanism in the Michigan 508(h) submission. Nor did the agency adequately consider whether "the interests of producers [were] adequately protected" by that submission. 7 U.S.C. § 1508(h)(3)(A)(i). *The agency's approval of the submission was therefore arbitrary and capricious. See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 220 (2016).

*Id.* at 533–34 (emphasis added).

Defendant's argument that their position was "substantially" justified because the Plaintiffs only prevailed on one aspect of the case and lost on other issues is not well taken. The Sixth Circuit rejected this reasoning in *Glenn v. Commissioner of Social Security*, 763 F.3d 494, 498 (6th Cir. 2014), where it held that the substantial justification standard could not be reduced "to a matter of comparing the number of successful claims to unsuccessful claims in a single appeal." The Court went on to state, "Rather, the question is whether the government's litigating position…is 'justified to a degree that could satisfy a reasonable person' and whether it was supported by law and fact." *Id*. at 498-99 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (emphasis added). As the Sixth Circuit held in the present case, the Defendant's position both at the administrative level and the judicial level was not supported by law and fact; to the contrary, it represented a violation of law.

The government bears the burden of demonstrating substantial justification. *E.W. Grobbel Sons, Inc. v. Nat'l Labor Relations Bd.*, 176 F.3d 875, 878 (6th Cir. 1999). It has not met that burden in this case.

7

### 3. Scope of Attorney Fees

Defendant argues that any award of attorney fees "should be reduced by striking fees for time expended on losing issues, including all time before and after the first appeal." (ECF No. 146, PageID.18293).

In *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983), the Supreme Court held that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees…."[1] The Court cautioned, however, against "apportion[ing] the fee award mechanically on the basis of respondents' success or failure on particular issues." *Id*. at 439. In terms of when attorney hours spent on unsuccessful claims should be excluded, the Court held:

> Where the plaintiff has failed to prevail on a claim *that is distinct in all respects from his successful claims,* the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee.

*Id*. at 440. (Emphasis added). However, the Court went on to hold that when the plaintiff obtains substantial relief, and the successful and unsuccessful claims are related, it is inappropriate to reduce the fee by the hours spent on the unsuccessful claims:

> Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.

---

[1] *Hensley* involved a request for attorney's fees under 42 U.S.C. § 1988. The analysis is the same under the EAJA. *Id*., 461 U.S. at 446, n.7.

*Id*.

In *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 552 (6th Cir. 2008), the Sixth Circuit summarized as follows the two-part inquiry of *Hensley* for determining whether attorney's fees should or should not be reduced based on partial success:

> In such cases, we must address two issues: (1) whether the claims on which the plaintiff failed to prevail were or were not related to the claims on which he or she succeeded, and (2) whether the plaintiff achieved a sufficient degree of success to render the hours reasonably expended a satisfactory basis for awarding attorney fees.

In the present case, Plaintiffs set forth two counts in their second amended complaint. In Count One, the Plaintiffs asserted that the administrative determinations of December 15, 2015 and March 8, 2016 "were arbitrary, capricious, an abuse of discretion, and not in accordance with law; were contrary to statutes and other law; were without observance of procedure required by law; and were unwarranted by the facts." (ECF No. 72, PageID.1657, ¶111). They requested the Court "to declare the administrative decisions of the FCIC and RMA to be contrary to law and to order (enjoin) the RMA to set the harvest price at an amount based upon actual market prices and to order such other relief as may be necessary to ensure that the proper amount of indemnity is paid to Plaintiffs." (*Id*. at PageID.1657-1658).

9

In Count Two, the Plaintiffs asserted that 7 U.S.C. § 1508(c)(5) requires that harvest prices be set to reflect actual market prices, and further, that the RMA and FCIC may approve policies submitted pursuant to 7 U.S.C. § 1508(h) "only if those policies adequately protect the interests of producers, are viable and marketable, and provide insurance coverage in a significantly improved form" (*Id*. at PageID.1658, ¶115). As with Count One, the Plaintiffs challenged the administrative decisions as "arbitrary, capricious, an abuse of discretion, and not in accordance with law; were contrary to statutes and other law; were without observance of procedure required by law; and were unwarranted by the facts." (*Id*. at PageID.1659, ¶116).

The district court granted summary judgment to the Defendants on both counts. On appeal, the Sixth Circuit reversed the grant of summary judgment on Count Two, but affirmed on Count One. Nevertheless, because of the critical mistake of fact at both the administrative level and the district court level, the Sixth Circuit found that the administrative decisions were in fact arbitrary, capricious, and contrary to law:

> As shown above, the agency violated 7 C.F.R. § 400.701 when it found that the Michigan 508(h) proposal presented only "non-significant changes" to the Minnesota one. (A September 2016 revision to § 400.701 is inapposite here.) Again the mistake was by all appearances inadvertent: the FCIC appears simply not to have realized that the endorsements in the Michigan and Minnesota 508(h) proposals included different default pricing mechanisms. That change was plainly "significant," so the agency was required to treat the Michigan

10

> submission as "a new 508(h) submission" and to "forward the complete 508(h) submission to at least five expert reviewers[.]" 7 C.F.R. §§ 400.709, 400.706. The FCIC did neither of those things, so its approval of the Michigan submission was done "without observance of procedure required by law[.]" 5 U.S.C. § 706(2)(D).
>
> The record likewise makes clear that, because of the same mistake, the agency did not adequately consider the impact of the default pricing mechanism in the Michigan 508(h) submission. Nor did the agency adequately consider whether "the interests of producers [were] adequately protected" by that submission. 7 U.S.C. § 1508(h)(3)(A)(i). The agency's approval of the submission was therefore arbitrary and capricious.

*Ackerman*, 995 F.3d at 533.

So, as to the first inquiry, the underlying basis of the claims in both Count One and Count Two are related, in that they are both centered on the legal and factual defects in the administrative decisions, rendering those decisions arbitrary, capricious, and contrary to law. Claims are related where they arise out of a "common core of facts or are based on related legal theories." *Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 448 (6th Cir. 2009).

The question in the second inquiry is whether the Plaintiffs' degree of success in the litigation, even if they were only partially successful, makes an unreduced award of attorney fees reasonable. Many of the cases that deal with this issue involve not only partial success on various counts, but great disparities between the amount of money damages sought and the amount awarded. For example, in *McKelvey v. Sec'y of U.S. Army*, 768 F.3d 491, 495 (6th Cir. 2014), the Sixth Circuit

11

stated observed that "the amount of damages awarded as compared to the amount sought in a damages claim is one way to think about the degree of success," adding that "[f]ew, if any, reasonable litigants would call a monetary judgment that comes in well under the money offered to settle the case a success." *See also See Hescott v. City of Saginaw*, No. 10-CV-13713, 2015 WL 13589671, at *7 (E.D. Mich. June 19, 2015) (on remand) (where plaintiff sought $290,000 from jury and secured a verdict of $5,000, the court found it "difficult to categorize Plaintiffs' success as anything other than de minimis.").

In the present case, however, the Plaintiffs sought equitable relief. And while they did not obtain reformation of the contract or a directive to the RMA to establish a specific harvest price for dry beans, they did obtain a finding that the administrative decision was arbitrary and capricious, and a remand to the administrative agency for further proceedings. Moreover, the Plaintiffs' litigation efforts, both at the district court and appellate levels, were compounded not only by the Defendants having falsely represented to the district court that the Minnesota and Michigan proposals were the same, but by their failure to forthrightly acknowledge their mistake on appeal. As the Sixth Circuit noted, "On appeal, the government's brief unhelpfully elides both mistakes rather than acknowledge them; but Plaintiffs' counsel on appeal has made the existence of those mistakes clear enough." *Ackerman*, 995 F.3d at 529. And on remand, the only issue was the nature

of the remedy to be ordered, not Plaintiffs' entitlement to a remedy. Given the totality of these circumstances, the relief that Plaintiffs obtained was significant, and they are entitled to attorney's fees expended from the inception of the litigation through the remand by the Sixth Circuit following the first appeal.

However, attorney fees for proceedings on remand from the Sixth Circuit are a different matter. As the district court noted in its decision on remand, "The only remaining issue is the remedy for the FCIC's procedural violation." (ECF No. 137, PageID.18103). Plaintiffs having obtained their primary relief from the Sixth Circuit, the proceedings on remand can be considered a discrete part of the litigation. Plaintiffs sought to have the dry bean endorsement reformed under a theory of mutual mistake; the Defendants sought a remand to the administrative agency. (*Id*. at PageID.18103-18104). The district court granted the Defendants' requested remedy. The Plaintiffs did not prevail in the narrower issue on remand, nor did they prevail in the second appeal to the Sixth Circuit. It is within the Court's discretion to reduce their attorney fees accordingly.

### 4. Amount of Attorney Fees

Attorney's fees claimed under the EAJA must be reasonable. *Glass v. Secretary of HHS*, 822 F.2d 19, 21 (6th Cir. 1987). As the Supreme Court noted in *Hensley*, 461 at 433, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation

13

multiplied by a reasonable hourly rate." In *Glass*, 822 F.2d at 21, the Sixth Circuit recognized "that the rate-times-hours method of calculation, also known as the 'lodestar' approach, includes most, if not all, of the factors relevant to determining a reasonable attorney's fee."

### a. The Hourly Rate

28 U.S.C. § 2412(d)(2)(A) caps attorney's fees at $125 per hour "unless the court determines that an increase in the cost of living or a special factor…justifies a higher fee." In *Bryant v. Commissioner of Soc. Sec.* 578 F.3d 443, 450 (6th Cir. 2009), the Sixth Circuit held that it is the plaintiffs' burden to justify a rate above the statutory maximum and that they must produce evidence beyond the attorney's own affidavit.

In this case, attorney Tallman seeks fees at the rate of $350 per hour, and attorney Granzatto seeks fees at the rate of $300 per hour. In support of these requests, and in addition to information on the increase reflected in the Consumer Price Index, the declaration of counsel shows that both attorneys are highly experienced in their respective fields, and that the rates they request are within the range of Michigan attorneys with comparable skill and experience. *Affidavit*, Exhibit 2 (ECF No. 143-1, PageID.18195-18196). This is substantiated by the data contained in 2020 Economics of Law survey published by the State Bar of Michigan. Exhibit 2A (*Id*. at PageID.18198-18201). *See Pizzo v. Commissioner of*

*Social Sec.*, No. 13–CV–11344, 2014 WL 7157129, *5 (E.D. Mich. December 15, 2014) (affidavit, CPI, and Economics of Law Survey, considered in tandem, support request for rate exceeding statutory maximum). In addition, I note that although Defendants contest Plaintiffs' entitlement to attorney fees, or in the alternative contest the scope of the work for which they may be awarded fees, they do not contest the hourly rates requested by counsel.

Plaintiffs' attorneys have carried their burden of showing an entitlement to an hourly rate above the statutory maximum. Attorney Tallman may be compensated at the rate of $350 per hour, and attorney Granzatto at $300 per hour.

### b. Number of Hours

As discussed above, Plaintiffs are not entitled to attorney's fees for attorney hours expended following the remand by the Sixth Circuit. Counsels' time sheets are contained in Exhibit 3 (ECF No. 143-1, PageID.18202-18216). Therefore, any hours claimed after June 21, 2021 (the date the Sixth Circuit issued its mandate) must be excluded.

Plaintiffs' time sheets have been submitted as Exhibit 3. (ECF No. 143-1, PageID.18202-18216). The total hours expended on remand from the Sixth Circuit after June 21, 2021 (excluding time preparing the attorney fee petition)[2] is 74.65

---

[2] Attorney time spent preparing a fee motion under the EAJA is compensable. *See Montgomery v. Colvin*, 2015 WL 6467627 (E.D. Mich., Oct. 27, 2015).

hours. 54.45 hours are attributable to attorney Tallman (at $350 per hour), and 20.2 hours are attributable to appellate counsel Granzatto (at $300 per hour). Therefore, fees for attorney Tallman should be reduced by $19,057.50, and fees for attorney Granzatto should be reduced by $6,060.00, for a total reduction of $25,117.50.

In sum, Plaintiffs should be awarded $132,192.50 in attorney's fees, plus $900.00 in filing fees,[3] for a total award of $133,092.50.

### 5. Fees are Payable to Counsel

Plaintiffs have executed assignments of EAJA fees to their attorneys. (ECF No.143-1, PageID.18141-181940. While EAJA fees would otherwise be paid to the Plaintiffs, *see Astrue v. Ratliff,* 560 U.S. 586 (2010), these assignments permit payment directly to the attorney, with an offset for any preexisting federal debt owed by the Plaintiffs. *See Cowart v. Comm'r of Soc. Sec.*,795 F. Supp. 2d 667, 671–72 (2011).

### D. Conclusion

For these reasons, **IT IS RECOMMENDED** that Plaintiffs' Motion For Attorneys' Fees (ECF No. 143) be **GRANTED IN PART**, to the extent that they be awarded total fees and costs in the amount of $133,092.50.

---

[3] "Under EAJA, recovery of the filing fee is appropriate." *Wegrzyn v. Comm'r of Soc. Sec.*, No. 14-12779, 2016 WL 316351, at *3 (E.D. Mich. Jan. 5, 2016), *report and recommendation adopted,* No. 14-12779, 2016 WL 304758 (E.D. Mich. Jan. 26, 2016). (Citing 28 U.S.C. § 2412(a)(1).

### III.  REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 1, 2023                                    s/ PATRICIA T. MORRIS
                                                                            Patricia T. Morris
                                                                            United States Magistrate Judge