UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ACKERMAN BROTHERS FARMS, LLC,
*et al.*,

        Plaintiffs,        Case No. 1:17-cv-11779

v.        Honorable Thomas L. Ludington
        United States District Judge

UNITED STATES DEPARTMENT OF
AGRICULTURE, *et al.*,

        Defendants.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO ENFORCE THE REMAND ORDER

In 2013, the Federal Crop Insurance Corporation (FCIC) approved an insurance program for dry-bean farmers in Michigan. The 2015 dry-bean harvest rendered the policies sold under the program "virtually worthless." *Ackerman v. United States Dep't of Agric.*, 995 F.3d 528, 531 (6th Cir. 2021). So in 2017, Plaintiffs—a group of Michigan farmers—sued the FCIC, Risk Management Agency, United States Department of Agriculture, and various insurers under the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq.*, challenging the FCIC's approval of the insurance program.

In 2019, this Court granted summary judgment in favor of Defendants, primarily in reliance on Defendants' misrepresentation about the Michigan insurance program's similarity to an insurance program that the FCIC previously approved. Plaintiffs appealed, and the Sixth Circuit identified the misrepresentation. As a result, the Sixth Circuit concluded that FCIC's approval of the insurance program for Michigan dry-bean farmers did not comply with legally required procedures.

Ultimately, this Court remanded the case to the FCIC to reexamine the Michigan program based on a newly generated record that adhered to legally required procedures. Plaintiffs appealed the Remand Order to the Sixth Circuit. But the Sixth Circuit dismissed the appeal for lack of jurisdiction. In so doing, the Sixth Circuit noted that Plaintiffs' avenue to challenge an unfavorable decision on remand to the agency was to bring a new lawsuit in federal court.

On remand, the FCIC once again approved the insurance program. Dissatisfied with that result, Plaintiffs moved to enforce this Court's Remand Order, contending, once again—but without a complete record—that the FCIC erred on remand. As explained below, Plaintiffs' Motion to Enforce the Remand Order will be denied. For review of the FCIC's most recent decision to approve the insurance program in Michigan, Plaintiffs must initiate a separate case.

I.

A.

1.

Since 1938, the Federal Government has offered crop insurance to farmers through the Federal Crop Insurance Corporation (FCIC)—a government corporation within the Department of Agriculture. *Ackerman v. United States Dep't of Agric.*, 995 F.3d 528, 529 (6th Cir. 2021). In establishing this crop-insurance system, the Federal Government sought "to promote the national welfare by improving the economic stability of agriculture . . . and providing the means for the research and experience helpful in devising . . . such insurance." 7 U.S.C. § 1502(a). Under Congress's original scheme, "only the FCIC issued crop insurance policies and processed claims based on those policies." *All. Ins. Co. v. Wilson*, 384 F.3d 547, 549 (8th Cir. 2004).

Several decades later, Congress revised its crop insurance scheme when it enacted the Federal Crop Insurance Act of 1980 (the "Act"), 7 U.S.C. § 1501 *et seq.* The Act expanded the Federal Government's crop-insurance program by allowing private entities—not just the FCIC—

to offer crop insurance. *Ackerman*, 995 F.3d at 529. To that end, the Act allows private entities to, among other things, offer "a new kind of coverage for a commodity that [has] previously had no available crop insurance." 7 U.S.C. § 1508(h)(3)(A)(ii)(III).

But before offering a new kind of coverage, a private entity must apply to the FCIC for approval. *Ackerman*, 995 F.3d at 530. The application, commonly called a "508(h) submission," must analyze the proposed policy and its terms. *Id.* (citing 7 C.F.R. § 400.705). The FCIC then forwards the 508(h) submission "to at least five experts for review." 7 C.F.R. § 400.706(b)(2). After that, the FCIC must approve the application if it determines, among other things, that the new policy "adequately protect[s]" "the interests of producers." 7 U.S.C. § 1508(h)(3)(A). If the FCIC approves the application, the FCIC publishes a handbook that provides "the FCIC-approved procedures for administering the policy." *Ackerman*, 995 F.3d at 530 (internal quotation marks omitted). A private actor may propose changes to a policy after its initial approval, "but the FCIC must review any 'significant changes' as a new 508(h) submission." *Id.*

**2.**

Under this federal crop-insurance framework, insurance policies ordinarily "take one of two forms": (1) yield protection, or (2) revenue protection. *Id.* Yield protection policies are narrower: they "only provide[] protection against a production loss[,]"—that is, a smaller-than-projected harvest. 7 C.F.R. § 457.8. By contrast, revenue protection policies "provide[] protection against loss of revenue due to a production loss, price decline or increase, or a combination of both." *Id.* In other words, "[r]evenue protection thus protects against losses from production *or* price." *Ackerman*, 995 F.3d at 530 (emphasis in original).

When farmers purchase revenue protection policies, they are typically "entitled to payment under the price-protection component of [the] policy when the 'harvest price' for [their] crop falls

short of the 'projected price.'" *Id.* The harvest price is the "actual market price for the farmer's crop during a particular" year. *Id.* The projected price is set by the FCIC each year. *See id.* Usually, the FCIC—or the Risk Management Agency (RMA) overseeing the FCIC—determines both the harvest and projected price for a crop "by using data from commodities exchanges." *Id.* Yet "if data from the exchanges is insufficient for the agency to employ its usual methodology for a particular crop" year, the FCIC determines and announces the harvest price. *Id.*

**B.**

**1.**

Against that backdrop, in 2011, Watts and Associates, Inc. (Watts), an economic consulting firm, proposed a pilot program for revenue-protection insurance for dry-bean farmers in Minnesota and North Dakota (the "Minnesota Submission"). *Id.* But at the time Watts filed the Minnesota Submission, dry beans lacked a commodities exchange necessary to set harvest prices and projected prices. *Id.* So Watts proposed a different method: the RMA or FCIC would (1) set the *projected price* using average prices offered by dry-bean processors before the planting season; and (2) set the *harvest price* using the market prices reported weekly by the Bean Market News, a federal publication. *Id.* at 530–31. As a fallback, if the Bean Market News did not report enough data, the "harvest price [would] be determined and announced by the FCIC"—as it did when commodities exchanges lacked sufficient data. *Id.* at 531.

In March 2012, the FCIC approved Watts's Minnesota Submission. *Id.* Yet for unexplained reasons, Watts did not implement the Minnesota Submission as approved by the FCIC, as they represented. *Id.* As implemented, the actual policies sold in Minnesota and North Dakota did *not* provide the Minnesota Submission's fallback provision. *Id.* Rather, those policies provided that if the Bean Market News did not report enough data, "the harvest price [would] be *equal* to the

- 4 -

projected price." *Id.* (emphasis added). Because revenue-protection insurance indemnifies farmers only when the harvest price falls *below* the projected price, Watts's implemented scheme risked rendering the policies actually sold in Minnesota and North Dakota "virtually worthless." *Id.*

### 2.

In July 2013, Watts applied to expand its pilot program to Michigan (the "Michigan Submission"). *Id.* But the Michigan Submission contained an important difference from the Minnesota Submission: the Michigan Submission's proposed endorsement included the fallback provision that the Minnesota and North Dakota policies included as implemented, rather than as approved. *Id.* That is, the Michigan Submission's endorsement provided that if the Bean Market News did not report enough data, the harvest price would be the projected price. *Id.* Even so, in August 2013, the FCIC characterized Watts's Michigan Submission as a "non-significant change" to the Minnesota Submission and therefore approved it. *Id.*

In 2015, Plaintiffs—a group of Michigan dry-bean farmers purchased—Watts's revenue protection under an endorsement named the "Dry Bean Revenue Endorsement" (DBRE). That year, a bountiful harvest and insufficient pricing data produced the perfect storm: the increased dry-bean supply drove market prices below projected prices, and the Bean Market News did not generate enough data to set harvest prices. *Id.* As a result, the harvest price for some dry beans defaulted to the projected price, rendering the farmers' revenue-protection policies of little to no value and leaving Plaintiffs empty-handed. *Id.*

### C.

### 1.

In June 2017, Plaintiffs filed a putative class action against the FCIC, RMA, Department of Agriculture, and various insurers under the Administrative Procedure Act (APA), 5 U.S.C. §

551 *et seq.* ECF No. 1. Plaintiffs claimed that the FCIC's approval of the Michigan Submission was arbitrary and capricious, and sought to compel the RMA and FCIC to set a harvest price. *Id.* at PageID.23–24. Due to a binding arbitration agreement, Plaintiffs' claims against the insurers were dismissed. ECF No. 70 at PageID.1632.

At the summary-judgment stage, however, Defendants represented that the fallback provisions in the Minnesota and Michigan Submissions were the same—they even purported to quote from the Minnesota Submission in their briefing. *See* ECF No. 96 at PageID.17651. To that end, Defendants represented that the Minnesota Submission contained the fallback-harvest-price provision that Minnesota and North Dakota policies actually contained, rather than the one that the FCIC approved. *See id.* Based largely on that representation, this Court concluded that there was no significant difference between the Minnesota and Michigan Submissions, entered summary judgment for Defendants, and dismissed the case. ECF No. 109.

Yet as the Sixth Circuit observed on appeal, "[t]hat representation was false." *Ackerman*, 995 F.3d at 532. In reality, as discussed above, the Minnesota Submission required the FCIC to announce the harvest price when the Bean Market News reported insufficient data; it did not, as Defendants represented, require the harvest price to be set equal to the projected price. *Id.* "That change was plainly 'significant'" under the FCIC's regulations, so the FCIC should have "treat[ed] the Michigan [S]ubmission as 'a new 508(h) submission' and . . . 'forward[ed] [it] to at least five expert reviewers[.]'" *Id.* at 533 (quoting 7 C.F.R. §§ 400.709, 400.706). Because the FCIC did not do so, its approval of the Michigan Submission did not observe "procedure required by law." *Id.* (quoting 5 U.S.C. § 706(2)(D)). The Sixth Circuit thus reversed and remanded the case to this Court to fashion a remedy. *See id.* at 534.

Ultimately, without vacating the FCIC's initial approval of the Michigan Submission, this Court remanded the case to the FCIC to treat it "as a new 508(h) submission and carefully consider whether 'the interests of [farmers] are adequately protected.'" ECF No. 137 at PageID.18111 (quoting 7 U.S.C. § 1508(h)(3)(A)). Importantly, this Court did not retain jurisdiction to enforce the Remand Order. *See generally* ECF Nos. 137; 138. And when Plaintiffs appealed the Remand Order, the Sixth Circuit dismissed the appeal, reasoning that it lacked jurisdiction. *Ackerman v. United States Dep't of Agric.*, No. 22-1056, 2022 WL 2965613, at *1 (6th Cir. July 20, 2022). The Sixth Circuit also noted that if Plaintiffs are "dissatisfied with the agency's ruling" on remand—which would be a discrete agency action based on a new factual record—they "will be able to bring suit again," and "if dissatisfied with the district court's ruling, appeal to [the Sixth Circuit]." *Id.* (quoting *Nat'l Air Traffic Controllers Ass'n v. Sec'y of Dep't of Transp.*, No. 06-3466, 2007 WL 2141941, at *3 (6th Cir. July 26, 2007) (requiring a separate lawsuit for plaintiffs to challenge remanded agency decision)).

**2.**

Plaintiffs are once again dissatisfied with the FCIC's most recent decision on remand. *See* ECF No. 155. On remand, the FCIC approved the Michigan Submission after consulting with various experts and analyzing insurance program participation, in accordance with this Court's directive to consider whether the interests of the farmers are adequately protected. *See id.* at PageID.18372, 18386–91 (asking each expert whether the Michigan Submission adequately protects the interests of the farmers). In response, Plaintiffs filed a motion to enforce the remand order, challenging Defendants' most recent approval of the Michigan Submission. *See id.* at PageID.18357. To support this challenge, Plaintiffs allege that three of the five experts who reviewed the Michigan Submission concluded that it did not adequately protect farmers' interests,


thus rendering the FCIC's decision "erroneous." *See id.* at 18365–69. Notably, Plaintiffs have not provided the complete record for this Court to conduct a meaningful review. *See generally id.* Rather, Plaintiffs provide only (1) the three expert reports that concluded the Michigan Submission did not adequately protect farmers' interests, (2) the final FCIC approval order, and (3) a PowerPoint used in the remand proceedings, which Plaintiffs obtained through a Freedom of Information Act (FOIA) request. *See id.* at PageID.18363, 18372–91.

## II.

As a threshold issue, Defendants argue that Plaintiff's Motion should be denied because this Court did not retain jurisdiction over the case when remanding it to the FCIC. ECF No. 159 at PageID.18427–30. Defendants argue that without this Court retaining jurisdiction, if Plaintiffs seek to challenge the FCIC's second approval of the Michigan Submission, they must file a new case under the APA. *See id.* Defendants are correct.

"[W]hen a court remands a case based on agency error *without* retaining jurisdiction, the case is terminated . . . ." *SecurityPoint Holdings, Inc. v. Transp. Sec. Admin.*, 836 F.3d 32, 38 (D.C. Cir. 2016) (emphasis in original). In this way, whether a court retains jurisdiction when remanding a case to an agency affects what one must do to challenge the remanded proceedings. *See Shalala v. Schaefer*, 509 U.S. 292, 299 (1993). Indeed, when a court does not retain jurisdiction over a remanded agency case, a party must file a "separate piece of litigation"—even if impractical or inefficient—to challenge the agency's action on remand. *Id.*; *see also Ackerman*, 2022 WL 2965613, at *1; *Nat'l Air Traffic Controllers Ass'n*, 2007 WL 2141941, at *3; *Heartland Reg'l Med. Ctr. v. Leavitt*, 415 F.3d 24, 30 (D.C. Cir. 2005).

Here, this Court did not retain jurisdiction over the case. It remanded the case to the FCIC for fresh proceedings on the merits. *See generally* ECF No. 137. For that reason, this Court's

Remand Order and Judgment contain no express language retaining jurisdiction over the case. *See generally* ECF Nos. 137; 138. Nor did either the Remand Order or Judgment implicitly suggest jurisdiction would be retained. *See generally id.* On remand, the FCIC was to reconsider the Michigan Submission based on a newly generated record. *See generally* ECF No. 137. Thus, Plaintiffs must initiate a separate case under the APA to challenge the FCIC's most recent decision on remand to approve the Michigan Submission. *Shalala*, 509 U.S. at 299; *Heartland*, 415 F.3d at 30.

Plaintiffs argument to the contrary is misplaced. Plaintiffs seemingly argue that this Court implicitly retained jurisdiction when it remanded the case without vacating the FCIC's initial decision. *See* ECF Nos. 155 at PageID.18365; 160 at PageID.18439–41. In conclusory fashion, Plaintiffs cite two cases where a court remanded a case without vacating the underlying agency decision as support. *See id.* (citing *Wood v. Burwell*, 837 F.3d 969, 976–77 (9th Cir. 2016); *Ctr. for Biological Diversity v. U.S. Army Corps of Eng'rs*, No. 20-103, 2021 WL 14929, at *2 (D.D.C. Jan. 1, 2021)). But these cases do not support the proposition that a court implicitly retains jurisdiction over a case on remand to an agency for new proceedings without vacating the underlying agency decision. In *Wood*, the remanding court explicitly retained jurisdiction over the case, so the retention of jurisdiction was not *implicitly because of* the court's decision not to vacate the remanded agency decision. *See* 837 F.3d at 971. And in *Ctr. for Biological Diversity*, when requested to retain jurisdiction on remand, the court explicitly declined to do so. *See* 2021 WL 14929, at *3.

And besides, Plaintiffs' post-remand conduct undermines their contention. After the Remand Order was final, Plaintiffs sought, and were awarded, attorneys' fees under the Equal Access to Justice Act (EAJA). *See* ECF Nos. 143; 154. But under the EAJA, a party may only

immediately obtain attorney fees when a court remands the case to an agency under circumstances where the court did not retain jurisdiction. *See Shalala*, 509 U.S. at 295–301; *see also Crawford v. United States*, 66 F.4th 1339, 1342 (Fed. Cir. 2023); *SecurityPoint,* 836 F.3d at 38. If the court retains jurisdiction, the party may only obtain attorneys' fees after securing a favorable decision in the remanded proceedings. *See SecurityPoint*, 836 F.3d at 38. In other words, if this Court retained jurisdiction over the case, Plaintiffs would not have been entitled to attorneys' fees when they sought them. And Plaintiffs acknowledged as much in their Motion for Attorneys' Fees. *See* ECF No. 143 at PageID.18135 (acknowledging that to obtain attorneys' fees under the EAJA when they sought them, "the court must have entered a formal judgment ordering remand to the agency and must not have retained jurisdiction over the federal court action").

To be sure, "[t]his is not to say that the agency's reaffirmation of the same result . . . is invulnerable to attack . . . on the ground that the agency arbitrarily" or otherwise unlawfully reapproved the Michigan Submission. *Heartland*, 415 F.3d at 30 (emphasis in original omitted). Indeed, the limited materials that Plaintiffs provided—specifically, the three expert reports concluding that the Michigan Submission did not adequately protect farmers' interests—suggest that the FCIC's remand decision is suspect. But that determination "must be made in [a] separate APA action," with a complete record of the FCIC's decision on remand. *Id.*

In sum, this Court did not retain jurisdiction over this case when it remanded it to the FCIC for further proceedings. So Plaintiffs must file a new case under the APA to challenge the FCIC's decision to reapprove the Michigan Submission. As a result, Plaintiffs' Motion to Enforce the Remand Order, ECF No. 155, is denied.

## III.

Accordingly, it is **ORDERED** that Plaintiffs' Motion to Enforce the Remand Order, ECF No. 155, is **DENIED**.

Dated: May 28, 2025                               s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge